UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| DONALD WILLIAMS, TDOC #377315 | ) | |
| | ) | |
| v. | ) | NO. 2:12-CV-64 |
| | ) | *Greer/Inman* |
| NECX SECURITY THREAT GROUP | ) | |
| HR'G COMM.; DAVID SEXTON, Ex | ) | |
| Officio as Warden at NECX; REUBEN | ) | |
| HODGE, Ex Officio as Ass't Comm'r of | ) | |
| Operations, Tenn. Dep't of Corr.; and | ) | |
| CHRISTOPHER BAIRD, Ex Officio as | ) | |
| NECX STG Coordinator | ) | |

**MEMORANDUM and ORDER**

Donald Williams, an inmate in the custody of the Tennessee Department of Correction [TDOC], has filed this *pro se* civil rights action for injunctive relief under 28 U.S.C. § 1983, complaining that he was placed in the Security Threat Group [STG] housing unit at the Northeast Correctional Complex [NECX], in violation of his right to procedural due process. The defendants are the NECX STG Hearing Committee; David Sexton, NECX's Warden; Reuben Hodge, TDOC's Assistant Commissioner of Operations; and Christopher Baird, NECX's STG Coordinator.

**I. FILING FEE**

A prisoner such as plaintiff, regardless of his financial situation, must pay the filing fee, even if it must be collected in increments. Therefore, plaintiff is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). The custodian of his inmate trust

account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial partial payment, twenty percent (20%) of the greater of either the average monthly deposits to his inmate trust account or the average monthly balance in the account, for the six (6) months immediately preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1).

After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk of Court. 28 U.S.C. § 1915(b)(2). Payments should be mailed to: Clerk's Office, USDC; 220 West Depot Street, Suite 200; Greeneville, TN 37743.

To ensure compliance with the assessment procedures outlined above, the Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at the NECX and to TDOC Commissioner Derrick D. Schofield.

## II. PLAINTIFF'S CONTENTIONS

The allegations which follow are taken from plaintiff's complaint. On July 25, 2011, plaintiff was served with a confirmation notification, stating that he had been recommended for STG program placement at NECX under TDOC Policy No. 506.26 and that he, thereby, had received notification from the warden. The document contained nothing to explain the factual basis underlying his confirmation as an STG

2

member. Plaintiff was not allowed to read TDOC Policy No. 506.25, which provides the rules and regulations which guide the determination and classification of an inmate's involvement in an STG. Nor was plaintiff afforded a fair opportunity to rebut the unstated factual assertions before a neutral decision maker. Despite the lack of procedural safeguards, plaintiff was immediately transferred to the STG housing unit.

Plaintiff appealed the decision to place him in the STG program, but defendant Warden denied the appeal and defendant Hodge concurred with the Warden. During the appeal, plaintiff learned that he had received a score of 20 points during the investigation into his STG status —a score which justifies an inmate's confirmation as an STG member and his placement on the STG unit. That sum was comprised of 9 points for self admission, 8 points for STG tattoos, and 3 points for possession of STG documents, (Doc. 2, Attach. 1 at 1).

As a result of his placement on the STG unit, plaintiff was exposed to certain conditions and treatment. For example, he is listed in a federal threat assessment database as a domestic terrorist under 42 U.S.C. § 3714a and, for the rest of his life, will be negatively affected by being so listed whenever he travels using public transportation.[1] Plaintiff is not permitted to eat or exercise with the general prison

---

[1] Among plaintiff's other sentences, he is serving two life terms for two counts of felony murder, (Doc. 1, Attach. 1, Declaration in Support of Request to Proceed *In Forma Pauperis* at 1). It thus appears extremely unlikely that plaintiff will avail himself of public transportation anytime soon, so as to experience adverse effects from his STG designation.

3

Case 2:12-cv-00064-JRG-DHI   Document 4   Filed 05/04/12   Page 3 of 8   PageID #: 35

population. His attendance at group therapy sessions is mandatory and at religious programs may be curtailed at the discretion of the Warden. Visitation privileges are limited and may be cancelled as determined by the Warden. Plaintiff may not send or receive mail from other inmates and his legal mail is examined by staff members. Moreover, his placement in the STG unit is an indefinite assignment.

Plaintiff would have the Court issue an injunction requiring his release from STG status until this case is resolved and he is granted due process with respect to the matter, including a hearing on his STG confirmation, advance notice of the factual basis of his confirmation, a fair opportunity to rebut those allegations, and access to TDOC Policy No. 506.25 to assist him in preparing his defense.

### III. SCREENING

The Court must now screen the complaint to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so,

4

the complaint must be sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## IV. LAW and ANALYSIS

To state a viable § 1983 claim, plaintiff must allege: 1) that he was denied a right privilege or immunity secured by the constitution or laws of the United States, and 2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Plaintiff has failed to make the first showing.

To prevail on a procedural due process claim, a plaintiff must demonstrate, first, that he enjoyed a protected liberty interest and, second, that the process owed him was denied. *See Board of Regents v. Roth*, 408 U.S. 564, 569-570 (1972). A liberty interest arises either from the Due Process Clause in the Fifth or Fourteenth Amendment of the Constitution or from the rights conferred by a state.

Plaintiff has failed to cite to any authority, and the Court knows of none, which would support the premise that the challenged housing arrangement violates the Constitution or that he has a constitutional right in remaining free of STG status. Indeed, the opposite is true. Plaintiff has no constitutionally-protected entitlement to be confined in any particular facility or any particular area of the facility. *See Meachum v. Fano*, 427 U.S. 215, 224 (1983); *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir.1988), *aff'd sub nom., Neitzke v. Williams*, 490 U.S. 319 (1989) (stating that prisoners have no protected interest in a particular housing assignment). Nor has

5

plaintiff a right to any particular security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum*, 427 U.S. at 244; *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) ("Ford's designation as a 'Security Threat Group Member' is nothing more than a security classification used by the prison. Because Ford does not have a constitutional right to a particular security level or classification, he fails to state a claim.").

Plaintiff has not been deprived of a state-created liberty interest either. A valid conviction allows a state constitutionally to deprive a criminal defendant of his liberty, confine him in a prison and subject him to its rules, so long as conditions of confinement fall within the parameters of the sentence imposed. *See Montanye*, 427 U.S. at 242 (no due process violation where conditions "within the terms of confinement ordinarily contemplated by a prison sentence"). Liberty interests conferred by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

There is no indication that plaintiff's placement in the STG unit imposes an atypical or unusual hardship on plaintiff in relation to the ordinary incidents of prison life or that it will inevitably affect the duration of his sentence, since he does not claim the

loss of good time credits. *See id.* at 487. This is so even though plaintiff maintains that his placement in STG housing is an indefinite assignment.[2]

As to the conditions on the STG housing unit, "many liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). For example, the examination of "purported legal mail to the extent necessary to ensure it originates from or is direct to a legitimate legal source," (Doc. 1, Attach. 1 at 10,TDOC Policy No. 506.26(VI)(D)(18)), does not infringe on plaintiff's constitutional rights. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (No substantive due process claim under First Amendment absent allegations of "denial of access to the courts or some form of censorship of speech")under at examining a prisoner's prison regulations which prohibit inmates from writing other inmates has been upheld as constitutional. *See Turner v. Safley*, 482 U.S. 78, 93 (1987) (upholding ban on inmate-to-inmate correspondence imposed for the purpose of combating the growing problem of prison gangs). While it has not been held that the right of association is altogether terminated by imprisonment,"[s]ome curtailment of that freedom must be expected in the prison context," *Overton* 539 U.S. at 131, such as the restrictions on visitation and on contact with convicts in the general population for those

---

[2] Actually, under TDOC Policy No. 506.26(VI)(H)(1) (effective Mar. 1, 2008), an inmate may be removed from the STG housing unit by completing the STG Phase Program and renouncing, in writing, his membership in an STG, (Doc. 1, Attach. 1 at 12).

7

inmates in the STG housing unit. Thus, plaintiff has not been deprived of a state-conferred liberty interest by virtue of his assignment to be housed in the STG unit.

## V. CONCLUSION

For the above reasons, the Court finds that plaintiff has failed to state a claim for relief under § 1983. 28 U.S.C. § 1915(e)(2)(B); § 1915A. Upon carefully reviewing this complaint pursuant to 28 U.S.C. § 1915(a)(3), this Court **CERTIFIES** that any appeal from this action would not be taken in good faith. Accordingly, should plaintiff file a notice of appeal from this decision, the Court hereby **DENIES** him leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24.

A separate judgment order will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE